## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHELSEA L. HARRISON KEESLER, individually, on behalf of all others similarly situated, and on behalf of the Plan,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TRACTOR SUPPLY COMPANY,**<br><br>Serve at:<br><br>**Registered Agent CT Corporation Service 600 N 2nd St., Suite 401, Harrisburg, PA 17101**<br><br>**Defendant.** | **Case No.**<br><br>**Complaint – Class and Representative Action**<br><br>**Jury Trial Demanded**<br><br>**Electronically Filed** |

## CLASS AND REPRESENTATIVE ACTION COMPLAINT

Plaintiff Chealsea L. Harrison Keesler brings this class and representative action complaint against Tractor Supply Company, on behalf of herself, all others similarly situated, and the Plan. Plaintiff makes the following allegations based upon personal knowledge as to her own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      Tractor Supply is a Fortune 500 retailer that sells agricultural, farming, and ranching products like work clothes, tools, machine parts, pet food, and animal feed. It operates more than 2,000 retail stores throughout the United States under the Tractor Supply trade name.

2.      Upon information and belief, all regular employees and eligible dependents and certain part-time employees can receive health insurance coverage

by participating in a medical plan sponsored and administered by Tractor Supply. These medical plans operate under the plan name Tractor Supply Company Health and Welfare Plan ("the Plan").

3.      For those employees and their dependents to participate in the Plan, they must declare whether they are a tobacco user.  Those who do use tobacco products are required to pay an additional fee of $30 per pay period—or $780 per year—to maintain coverage.

4.      Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act, applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. Tractor Supply did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan.

5.      More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". To qualify as a compliant wellness program, a company must offer a "reasonable alternative standard", usually in the form of a smoking/tobacco cessation program, completion of which allows participants to avoid the entire surcharge.  In other words, a reasonable alternative standard will refund a tobacco user all of the tobacco surcharges paid during the operative plan year or allow them to avoid paying it in the first place.

6.      On information and belief, prior to the 2023 plan year, Although Tractor Supply encouraged its tobacco-using employees to complete a tobacco cessation program called Quit Genius, the completion of that program did not result in the surcharge being removed. Instead, a participant could only avoid the surcharge if that person has not used "tobacco in the last 12 months." As such, the company

2

simply did not provide any alternative standard to its participants; instead, it required participants to meet the original standard—not being a tobacco user.  Tractor Supply's decision to charge a discriminatory fee without offering any form of a reasonable alternative standard is a plain violation of ERISA.

7.     On information and belief, beginning with the 2023 plan year, Tractor Supply began allowing participants who use tobacco to prospectively avoid the surcharge after completing the Quit Genius cessation program. However, a compliant wellness program's reasonable alternative standard must allow participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon completion of the alternative standard, and must provide notice that such an alternative program exists in every communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

8.     But, on information and belief beginning with the 2023 plan year, a Tractor Supply plan participant who ceased tobacco use would only be eligible to avoid the surcharge on a going-forward basis, and thus could not earn the "full reward"—*i.e.*, avoiding the surcharge for the entire plan year. Further, Tractor Supply's plan materials used for communicating information about the surcharge with participants make no mention of an opportunity to earn the full reward for the entire plan year by completing a reasonable alternative standard.  Further, many of those communications, including the 2024 Open Enrollment Guide do not tell participants at all about the ability to avoid the tobacco surcharge. Moreover, those materials do not include a disclosure that the recommendations of an individual's personal physician would be accommodated. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Tractor Supply was and remains unlawful.

3

9. Plaintiff was a regular, full-time Tractor Supply employee who worked as an outfitter support specialist and who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. She brings this lawsuit on behalf of herself and all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Keesler is a citizen of the Commonwealth of Pennsylvania. Plaintiff worked for Tractor Supply at its retail location in Tunkhannock, Pennsylvania. Further, Plaintiff paid the Plan's premiums and tobacco surcharge within the Commonwealth of Pennsylvania. For example, Plaintiff paid the $30 tobacco surcharge during the pay period beginning on August 20, 2023 and concluding on September 2, 2023, which Tractor Supply automatically deducted from her wages.

11. Defendant Tractor Supply Company is a corporation organized under the laws of the State of Delaware with its principal place of business in Tennessee. Tractor Supply is registered to and does do business in the Commonwealth of Pennsylvania under its tradename Tractor Supply Co.

12. At all times relevant to this lawsuit, Defendants operated the Plan, which was available for Tractor Supply employees and their dependents. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

13. Plaintiff has been a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

14. This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. This Court also possesses subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which:

(1) there are at least 100 class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) Defendant and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

15.    This Court possesses personal jurisdiction over Tractor Supply in this case because it employed Plaintiff within the Commonwealth of Pennsylvania. Further, Tractor Supply has registered to do business in the Commonwealth of Pennsylvania and is, as a result, "at home" within the Commonwealth. Tractor Supply has purposefully availed itself of the privilege of conducting business within the Commonwealth of Pennsylvania. Further, ERISA authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2).

16.    Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District where Plaintiff worked for Tractor Supply and where the unlawful acts occurred.

## FACTUAL ALLEGATIONS

### a.  Tractor Supply's Tobacco Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.

17.    As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual

enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

18.    On its face, Tractor Supply's tobacco surcharge violates this provision. Plaintiff and all others similarly situated were, for plan years 2023 and earlier required to pay an additional "premium or contribution" of $30 per pay period, or $780 per year, based on a "health status-related factor", that being their use of tobacco products.

19.    Specifically, at all times relevant to this lawsuit, pursuant to Tractor Supply's enrollment rules for the Plan, any employee or covered dependent who used use any form of tobacco or vaping products were required to declare themselves to be tobacco users as part of the enrollment process and were subsequently required to pay the tobacco surcharge to maintain coverage.

20.    Payment of the tobacco surcharge was required for Plaintiff and all others similarly situated to remain insured under the Plan. Plaintiff and all others similarly situated have in fact paid the surcharge.

21.    Tractor Supply is and has been required to make contributions to the Plan to ensure that it remains adequately funded. By collecting the tobacco surcharge, Tractor Supply has both taken money for itself that, even if unlawfully collected in violation of 29 U.S.C. § 1182(b)(1), should have been paid into the Plan and reduced the amount of its own contributions but also used those funds to increase its profits.

22.    At all times relevant to this lawsuit, Tractor Supply has maintained sole control of the tobacco surcharge program, including by determining which participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees (if any) can cease paying the surcharge.

### b.  Tractor Supply Cannot Avail Itself to ERISA's Safe Harbor for Wellness Programs.

23.     As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

24.     But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

25.     Tractor Supply's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, nor does it provide notice of a reasonable alternative standard. As a result, it cannot meet each element of its affirmative defense.

26.     Consequently, Tractor Supply is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of its tobacco surcharge constitutes unlawful discrimination based on a health status-related factor.

### c.  Tractor Supply's Tobacco Surcharge Program Did Not Provide for a Reasonable Alternative Standard

27.     *First,* by law, a tobacco surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An

outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use")

28.     To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

29.     A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge is to permit participants to avoid the surcharge by completing a tobacco cessation program.

30.     But as the Department of Labor's regulations make clear, a putative alternative that requires the participant to actually quit smoking in order to receive the reward is necessarily not a "reasonable alternative standard." One example offered by the Department states that:

> Example 7—Tobacco use surcharge with alternative program requiring actual cessation. (i) Facts. Same facts as Example 6, except the plan does not provide participant F with the reward in subsequent years **unless F actually stops smoking after participating in the tobacco cessation program**.
>
> (ii) Conclusion. In this Example 7, **the program is not reasonably designed under paragraph (f)(4)(iii) of this section and does not provide a reasonable alternative standard as required under paragraph (f)(4)(iv) of this section**. The plan cannot cease to provide a reasonable alternative standard merely because the participant did not stop smoking after participating in a smoking cessation program.

29 C.F.R. § 2590.702, Example 7 (emphasis added).

31.     Yet meeting the original health outcome (*i.e.*, being tobacco free) is what the Plan required up until, on information and belief, 2023.  For example, Tractor Supply's Plan Materials stated that the only way to avoid the tobacco surcharge was to be tobacco free.  Although Tractor Supply offered a tobacco cessation program, it did not provide for avoiding the tobacco surcharge unless the participant had been tobacco free for 12 months:



Tobacco use is one of the leading causes of chronic illness. With that in mind, Team Members and spouses/domestic partners enrolled in the Medical Plan that use tobacco products will pay a bi-weekly tobacco surcharge.

**The Tobacco Use Surcharge applies separately to the Team Member and covered spouse/domestic partner as follows:**

- If only the Team Member OR covered spouse/domestic partner uses tobacco in the last 12 months – a single biweekly surcharge of $30 will apply.
- If both Team Member AND covered spouse/domestic partner use tobacco in the last 12 months, a biweekly surcharge of $60 will apply ($30 each).
- A surcharge is not applicable to other covered family members.
- Team Members who certify as a non-tobacco user or who certify a covered spouse/domestic partner as a non-tobacco user are responsible for notifying the Benefits Team upon beginning or re-starting tobacco use.
- Use of e-cigarettes/vape devices will be considered "tobacco" and will be subject to the Tobacco Surcharge.

To help you improve your health, Tractor Supply Company offers Covered Team Members and dependents over age 18 access to the Quit Genius Tobacco and Nicotine Cessation program at no cost.

32.     Because Tractor Supply did not provide Plan participants with an alternative program by which they could avoid payment of the surcharge, it has failed to meet the requirements for a "reasonable alternative standard", and consequently cannot avail itself of the safe harbor for wellness programs set out by ERISA.  To the extent Tractor Supply claims it did previously offer such a cessation program, its Plan materials plainly failed to provide reasonable notice of an alternative standard.

33.     *Second*, even for Plan years 2023 and 2024 during which Tractor Supply offered an alternative standard to avoid the tobacco surcharge, it failed to

offer the "full reward" because participants could not avoid the entirety of the tobacco surcharge if they completed the cessation program.  For a putative alternative standard (such as attending a tobacco cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

34.    The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

35.    But, a Tractor Supply participant who completed the alternative standard (unlawful as it may be) during a given plan year would not be eligible to avoid the entire tobacco surcharge. Instead, he or she could avoid the surcharge on a going-forward basis only and would not be eligible to receive a reimbursement for surcharge payments already made in that plan year:

Team Members and spouses/domestic partners enrolled in the Medical Plan that vape or use tobacco products will pay a bi-weekly tobacco surcharge of $30.

- You and/or a covered spouse/domestic partner can qualify for tobacco surcharge relief mid-year by completing the Quit Genius "Essentials 1" program (in-app) and six interactions with a Quit Coach. Generally, this takes at least six weeks to complete after enrolling."

36.     Because a Plan participant could not receive a retroactive reimbursement to avoid the tobacco surcharge in its entirety, Tractor Supply does not permit participants to receive the "full reward" and therefore does not provide for a "reasonable alternative standard."

### b. Tractor Supply Failed to Provide Notice of Availability of a Reasonable Alternative Standard

37.     *Third*, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program* . . . the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01 at 33166.

38.     But Plan materials discussing the tobacco surcharge do not disclose the existence of a reasonable alternative standard by which it can be avoided. Though some of the materials note that a participant may enroll in a tobacco cessation program, they do not disclose that such a program is an alternative standard by which a participant may qualify for the award (that is, avoid the surcharge).

39.     For instance, as alleged above, the 2024 plan year open enrollment guide fails to provide legally adequate notice in that it (1) fails to disclose the existence of a reasonable alternative standard by which a participant may avoid the surcharge; and (2) fails to disclose that a participant who completed the cessation

program would be eligible for retroactive reimbursement for surcharge payments made during that plan year.

40.     For example, the 2024 Open Enrollment Guide specifically discusses the tobacco surcharge premium differential.   Despite this, the entire 12 page document does not disclose the availability of an alternative standard to avoid the tobacco surcharge:

| Tobacco Use Surcharge (all forms of tobacco use including e-cigarettes and vape devices) | TM OR Spouse (bi-weekly) | +$30 | +$30 | +$30 | +$30 |
|---|---|---|---|---|---|
| | TM AND Spouse (bi-weekly) | +$60 | +$60 | +$60 | +$60 |

41.     *Fourth*, under the applicable regulations, "[t]he plan or issuer must disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a *statement that recommendations of an individual's personal physician will be accommodated*. 29 C.F.R. § 2590.702(f)(4)(v).

42.     The foregoing Plan materials cited above do not include a statement that the recommendations of an individual's physician will be accommodated. Upon information and belief, none of Tractor Supply's other written Plan materials referencing the tobacco surcharge include this disclosure either.

43.     Tractor Supply, then, has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a Plan participant could avoid the tobacco surcharge and receive the full reward, or that the recommendations of his or her personal physician would be accommodated. The company cannot then avail itself of the regulatory safe harbor for operating a lawful wellness program.

## CLASS ACTION ALLEGATIONS

44.    Class Definition: Plaintiff brings this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

> All Plan participants within the United States who paid Tractor Supply's tobacco surcharge at any time from six years prior to the filing of the Complaint to the present.

45.    Excluded from the Class are the Court and its officers, employees, and relatives; Tractor Supply and its subsidiaries, officers, and directors; and governmental entities.

46.    Numerosity: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Tractor Supply employs thousands of similarly situated individuals across the United States.

47.    All members of the Class are ascertainable by reference to objective criteria, as Tractor Supply has access to addresses and other contact information for Class members that can be used for notice purposes.

48.    Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class member will rise or fall on the question of whether the tobacco surcharge is compliant with all legal requirements, and therefore lawful.  Common questions include:

> a.  Whether Tractor Supply's tobacco surcharge discriminates against Plan participants and beneficiaries based on a health status-related factor;
>
> b.  Whether Tractor Supply's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

c. Whether Tractor Supply can meet every element of its statutory affirmative defense for operating a compliant wellness program;

d. Whether Tractor Supply offered a reasonable alternative standard when it required tobacco users to actually quit smoking and remain tobacco-free for ninety days to remove the surcharge;

e. Whether Tractor Supply would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

f. Whether all of Tractor Supply's Plan materials describing the tobacco surcharge give notice of a reasonable alternative standard by which a plan participant may receive the full reward;

g. Whether a plan document that describes the tobacco surcharge and notes the existence of a smoking cessation program, but does not disclose that enrollment in a smoking cessation program will allow a plan participant to avoid the surcharge gives adequate notice of a reasonable alternative standard;

h. Whether a plan document that describes the tobacco surcharge but does not disclose an alternative program by which a participant can earn the full reward for the plan year gives notice of a reasonable alternative standard;

i. Whether a plan document that describes the tobacco surcharge but does not disclose a statement that recommendations of an individual's personal physician will be accommodated gives notice of a reasonable alternative standard

j. Whether Tractor Supply's tobacco surcharge violates the law; and

k. Whether Tractor Supply breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

49.     <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by Tractor Supply—its collection of an unlawful surcharge—and are based on the same legal theories.

50.     <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class members whom she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

51.     <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

52.     To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## COUNT I – ERISA STATUTORY VIOLATION
### Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard
*By Plaintiff and the Class*

53.     Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

54.     To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $30 per pay period, or $780 per year.

55.     Tractor Supply's tobacco surcharge is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

  a.  A tobacco user could not avoid the surcharge by simply completing a designated smoking cessation program; rather, he or she was required to be tobacco free for 12 months; and

  b.  Even after Tractor Supply began offering an alternative standard to being tobacco free, the alternative was not "reasonable" because it did not reimburse surcharge payments already made during that plan year.  In other words, a participant who completed the alternative standard was not eligible to receive the "full reward" of the tobacco surcharge program, that being avoiding the entire surcharge for the year.

56.     Tractor Supply cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

57.     Tractor Supply's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

58.     29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

59.     Plaintiff and class members were required to pay an illegal fee, and Tractor Supply collected that fee from them in violation of the law. Equity requires that those funds be returned.

## COUNT II – ERISA STATUTORY VIOLATION
### Unlawful Surcharge – Failure to Provide Required Notice
#### *By Plaintiff and the Class*

60.     Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

61.     To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in the amount of $30 per pay period, or $780 per year.

62.     Tractor Supply's tobacco surcharge is not and was not a permissible wellness program, because Tractor Supply did not give statutorily required notice of reasonable alternative standard, in that:

    a. The Plan's written materials discussed the tobacco surcharge, but did not disclose the availability of an alternative standard—such as a smoking cessation program—by which the surcharge could be avoided, and instead required participants to be tobacco free for 12 months;

    b. The Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year; and

    c. The Plan's written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard.

63.     Tractor Supply cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

64.     Tractor Supply's tobacco surcharge has discriminated against, and continues to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

65.     29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

66.     Plaintiff and class members were required to pay an illegal fee, and Tractor Supply collected that fee from them in violation of the law. Equity requires that those funds be returned.

### COUNT III – ERISA BREACH OF FIDUCIARY DUTY
### 29 U.S.C. § 1109
*By Plaintiff and the Class, On Behalf of the Plan*

67.     Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

68.     At all times relevant to this lawsuit, Tractor Supply was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the medical benefits plans and disposition of their assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the medical plan.

69.     Tractor Supply breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled its own obligations to make contributions thereto.

70.     Upon information and belief, Tractor Supply's responsibility with respect to the funding of the Plan's claims and administrative expenses relating to the Plan's self-funded arrangements equaled the amount by which the Plan's claims

and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Tractor Supply's collection of the tobacco surcharge diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

71.    Despite being unlawful for the reasons already discussed above, Tractor Supply was duty-bound to deposit the tobacco surcharge amounts into the Plan once they were collected from Plaintiff and other similarly situated participants.  Instead, on information and belief, Tractor Supply took those amounts, did not deposit them into the Plan, used them to offset its own contribution amounts, and otherwise used them to profit at the expense of the Plan.

72.    As a result of the imposition of the tobacco surcharge, Tractor Supply enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

73.    Tractor Supply breached its fiduciary duties under ERISA in that it:

a.   failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

b.   failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

c.   caused the Plan to engage in transactions that Tractor Supply knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

    d.  dealt with assets of the Plan in Tractor Supply's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

    e.  acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

    f.  caused the Plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. *See* 29 U.S.C. § 1182(b).

74.    As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Tractor Supply is liable to make good to the plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

75.    Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29

U.S.C. § 1132(a)(2).

## <u>REQUEST FOR RELIEF</u>

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Tractor Supply as follows:

    A.  That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that

Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court order Tractor Supply to reimburse all persons who paid the tobacco surcharge within the relevant limitations period;

C. That the Court order disgorgement and/or restitution of all payments unlawfully assessed by Tractor Supply, or, alternatively, the profits earned by Tractor Supply in connection with its receipt of such unlawful fees;

D. That the Court grant a declaratory judgment holding that the acts of Tractor Supply described herein violate ERISA and applicable law, as well as the terms of the plan;

E. That the Court enter a permanent injunction against Tractor Supply prohibiting it from collecting a tobacco surcharge unless and until the company revises the surcharge to comply with all ERISA statutory requirements;

F. That the Court order Tractor Supply to provide all accountings necessary to determine the amounts it must make good to the plan and to plan participants and beneficiaries;

G. That the Court surcharge against Tractor Supply all funds it collected in violation of ERISA and the terms of the plan;

H. That the Court find and adjudge that Tractor Supply is liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

I. That the Court impose a constructive trust on profits received by Tractor Supply as a result of fiduciary breaches committed by it or for which it is

liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

J.  That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

K.  That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

L.  That the Court order the payment of interest to the extent it is allowed by law; and

M.  That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated:  September 23, 2024          Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**
*/s/ Derrek W. Cummings*
Derrek W. Cummings, Esq., PA Bar 83286
Larry A. Weisberg, Esq., PA Bar 83410
2704 Commerce Dr., Suite B
Harrisburg, Pennsylvania 17110
Telephone:   (717) 238-5707
Facsimile:   (717) 233-8133
dcummings@weisbergcummings.com
lweisberg@weisbergcummings.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, MO. Bar No. 43450*
Alexander T. Ricke, MO. Bar No. 65132*
Caleb J. Wagner, MO Bar No. 68458*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:   (816) 714-7100
Facsimile:   (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:   (816) 781-0002
Facsimile:   (816) 781-1984
ryan@mcclellandlawfirm.com

*pro hac vice* forthcoming

*Attorneys for Plaintiff*
*and the Proposed Class*