**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHELSEA L. HARRISON KEESLER, individually, on behalf of all others similarly situated, and on behalf of the Plan,<br><br>Plaintiff,<br><br>v.<br><br>TRACTOR SUPPLY COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 3:24-CV-01612<br><br>(SAPORITO, J.) |

## MEMORANDUM

The plaintiff, Chelsea L. Harrison Keesler, brings this class and representative action complaint against the defendant, Tractor Supply Company ("Tractor Supply"), on behalf of herself and all others similarly situated for relief under the Employee Retirement Income Security Act ("ERISA"). (Doc. 1). Tractor Supply has moved to transfer this action to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). (Doc. 13). The parties have briefed the matter (Doc. 14; Doc. 21; Doc. 29) and it is now ripe for a decision. For the following reasons, we will grant Tractor Supply's motion to transfer.

## I. Background

Tractor Supply's motion does not rely heavily on the substantive details of the plaintiff's complaint, and therefore we will only briefly recount the pertinent details from the complaint for this memorandum. (Doc. 1). The plaintiff is a former Tractor Supply employee who previously worked as an outfitter support specialist with the company. At the time of the plaintiff's employment, Tractor Supply administered and sponsored health insurance coverage under the Tractor Supply Company Health and Welfare Plan (the "Plan"). The Plan asked participants to declare whether they were tobacco users, and if so, they were required to pay an additional fee of $30 per pay period—or $780 per year—to maintain coverage. This fee is known as a "tobacco surcharge." However, under ERISA, tobacco users can avoid these surcharges by participating in a company's "wellness program," and specifically a "reasonable alternative standard," which allows individuals to participate in a smoking/tobacco cessation program in exchange for lessening the surcharge. Once a tobacco user completes the program, the user will either be refunded all paid surcharges during the operative plan year or allowed to forgo paying the surcharge all together.

The plaintiff alleges that Tractor Supply provided a tobacco cessation program called Quit Genius. However, the plaintiff avers that prior to the 2023 plan year, the completion of that program did not result in the tobacco surcharge being removed from an employees' payment. The plaintiff alleges that a participant could only avoid the tobacco surcharge if that person had not used "tobacco in the last 12 months" which, in essence, only applied to non-tobacco users. The tobacco surcharge therefore constituted a charge of a discriminatory fee without a reasonable alternative standard because tobacco users had no ability to participate in a program that would refund the fee.

The plaintiff further posits that Tractor Supply's plan materials used for communicating information about the surcharge fails to provide participants notice of a reasonable alternative standard and any ability to avoid the tobacco fee. The plaintiff contends that the surcharge violates ERISA's anti-discrimination requirements, and its collection by Tractor Supply was and remains unlawful. For these reasons, the plaintiff brings this lawsuit on behalf of herself and all similarly situated plan participants and beneficiaries, seeking to have the fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## II. Legal Standard

Tractor Supply has requested that this case be transferred to the United States District Court for the Middle District of Tennessee under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted). Section 1404(a) gives district courts broad discretion "to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1988)).

"Although § 1404(a) lists three factors impacting the decision to transfer, a district court ruling on a § 1404(a) motion must 'consider all relevant factors to determine whether on balance the litigation would

more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 445 (E.D. Pa. 1999) (quoting *Jumara*, 55 F.3d at 879). While there is no definitive formula or list of factors that must be considered, the Third Circuit has identified several private and public interests that should be considered and weighed in deciding whether to transfer an action under § 1404(a):

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum.).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–89 (citations omitted).

## III. Discussion

Before we consider the private and public favors in deciding whether to transfer the action, section 1404(a) dictates that a case may only be transferred "to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Therefore, "[p]rior to ordering a transfer the district court must make a determination that the suit could have been rightly started in the transferee district." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). Here, neither party disputes that both the Middle District of Pennsylvania and the Middle District of Tennessee are proper forums. (Doc. 21, at 9). We will therefore move to the next step to analyze whether transfer to that district is appropriate based on the Third Circuit's list of private and public factors.

### A. Private Interest Factors

The Third Circuit lists the following private factors in consideration of a motion to transfer:

> (a) plaintiff's forum preference as manifested in the original choice;
>
> (b) defendant's preferred forum;
>
> (c) whether the claim arose elsewhere;
>
> (d) the convenience of the parties as indicated by their

relative physical and financial condition;

(e) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

(f) the location of the books and records (similarly limited to the extent that files could not be produced in the alternative forum).

*Stevens v. USA Today Sports Media Grp., LLC*, No. 1:23-CV-1367, 2024 WL 1285535, at *3 (M.D. Pa. Mar. 26, 2024) (citing *Jumara*, 55 F.3d at 879). We shall consider each factor in our analysis.

We first consider the plaintiff's choice of forum. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request[.]" *Stevens*, 2024 WL 1285535, at *3 (quoting *Shutte*, 431 F.2d at 25) (citation omitted). Indeed, the Third Circuit has emphasized that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879; *see also Edwards v. Equifax Information Services, LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018) (citing *Shutte*, 431 F.2d at 25) ("Transfer is not to be liberally granted and should not occur unless the balance of convenience of the parties is strongly in favor of defendant."). However, the Supreme Court has found that in cases concerning class action lawsuits, a

plaintiff's choice of forum is considerably weakened. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Courts in this Circuit have reaffirmed this holding. *See Stevens,* 2024 WL 1285535, at *3; *Osborne v. Emp. Bene. Admin. Bd. of Kraft Heinz*, No. 2:19-CV-307, 2020 WL 1808270, at *6 (W.D. Pa. Apr. 9, 2020) ("An individual plaintiff's forum preference … is entitled to little weight in a … class action."). The plaintiff in this action has brought her case as a proposed class action, and while it is ultimately unclear at this stage of the number of potential participants and beneficiaries,[1] Tractor Supply has noted that there are 1,799 employees living in Tennessee enrolled in the Plan, with 144 Plan participants paying a tobacco surcharge as of 2024, compared to 611

[1] Tractor Supply has noted that it employs "more than 50,000 employees across 2,270 stores in 49 states." (Doc. 14, at 4). Without any further information narrowing the scope of potential participants and beneficiaries, it is therefore foreseeable that this action potentially encompasses employees from all 49 states.

employees living in Pennsylvania enrolled in the Plan, with 68 Plan participants paying a tobacco surcharge.[2] (Doc. 14, at 4). Because the potential plaintiffs are "located all over the country" and "not all located in one spot, it makes sense to center the case where the defendants have their headquarters." *Stevens,* 2024 WL 1285535, at *3.

Moreover, courts given a plaintiff's preferred forum less weight when "the operative facts occurred as much in [one district] as another forum." *See Stevens*, 2024 WL 1285535, at *3 (giving plaintiff's choice of forum less weight because most operative facts occurred elsewhere); *see also Cameli v. WNEP-16 The News Station*, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001) (collecting cases in support that "deference given to a plaintiff's choice of forum is reduced when the operative facts that give rise to the action occur in another district."). Here, although the plaintiff is a citizen of Pennsylvania and worked for Tractor Supply in the Middle District of Pennsylvania (Doc. 1, ¶ 10), it appears that the majority of the operative facts occurred in the Middle District of Tennessee. As Tractor

[2] Tractor Supply further states that "the Third Circuit encompasses only 827 employees currently enrolled in the Plan (of which 86 paid a surcharge in 2024), compared to the 3,882 enrolled employees (of which 397 paid a surcharge) found within the Sixth Circuit as a whole." (Doc. 14, at 4).

Supply notes, the Plan at the heart of the alleged ERISA violation is administered and operated by Tractor Supply from its headquarters in Tennessee (Doc. 14, at 3), and any evidence regarding the discussions and formulation of the Plan presumably occurred in Tennessee. Therefore, in light of these considerations, the plaintiff's choice of forum will ultimately be given little weight.

Second, we look at the defendant's preferred forum. "The second factor, defendant's forum choice, is 'entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another.'" *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008) (quoting *EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005)). Tractor Supply has made clear that it prefers this case in the Middle District of Tennessee rather than the Middle District of Pennsylvania. Therefore, this factor weighs slightly in favor of transfer.

Third, we must look at whether the claim arose elsewhere. This factor turns on "which forum contains the center of gravity of the dispute, its events and transactions." *Park Inn Int'l, LLC v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). The plaintiff argues that this

factor is "neutral, at best" (Doc. 21, at 15) because "[t]ime after time, courts have found that a breach that results from plaintiffs being denied benefits occurs where the benefits are to be received by the original pension holder." *Keating v. Whitmore Mfg. Co.*, 981 F. Supp. 890, 892 (E.D. Pa. 1997). But courts have found that in the context of class actions, "class members would suffer harm wherever they are located…." *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 679 (E.D. Pa. 2019). Therefore, in this case, we find Tractor Supply's argument more persuasive that "the center of gravity of the dispute" lies in its Tennessee headquarters where "[t]he Plan is administered and operated by Tractor Supply" (Doc. 14, at 3), especially in light of the fact that the plaintiff's proposed participants and beneficiaries are seemingly spread across the country. This factor weights in favor of transfer.

Fourth, we consider the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. We acknowledge that "Tractor Supply is a Fortune 500 retailer with a national presence, valued at $30 billion dollars" and that the plaintiff has attested that the transfer would financially burden her. (Doc. 21, at 19). But, we must keep in mind that in the context of a class lawsuit, Tractor

Supply additionally may have to spend significant resources travelling to the individual locations of all potential plaintiffs spread across the country. Moreover, some courts in the Middle District of Pennsylvania have accounted for the convenience of air travel in weighing a motion to transfer. *See Stevens*, 2024 WL 1285535, at *4 (finding proximities of airports factored into a convenience of parties' analysis). The closest large international airport to Wilkes-Barre, Pennsylvania is over 100 miles away at Newark Liberty International Airport, where Tractor Supply has stated that the Nashville International Airport is within nine miles of Brentwood, Tennessee. (Doc. 14, at 11). Therefore, while Tractor Supply's financials allow it to lessen the inconvenience of travel generally, we find that the overall complications of travel in this specific case make the Middle District of Tennessee more convenient for all potential parties than the Middle District of Pennsylvania. For these reasons, we find that this factor is neutral.

Fifth, we must examine "the convenience of witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Generally, this factor:

> [I]s a particularly significant factor in a court's decision whether to transfer. There are many different types of

> witnesses, however, and each one carries a different weight. Fact witnesses who possess firsthand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily in the balance of convenience analysis. Party witnesses or witnesses who are employed by a party, on the other hand, have little impact on the balance of convenience analysis since each party is obligated to procure the attendance of its own employees for trial. Likewise, expert witnesses or witnesses who are retained by a party to testify carry little weight because they are usually selected because of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any.

*Coppola*, 250 F.R.D. at 199 (citations, internal quotations, and brackets omitted). We are persuaded that in the context of this case, where we have previously found that the "the center of gravity of the dispute" lies in Tractor Supply's Tennessee headquarters where "[t]he Plan is administered and operated by Tractor Supply[,]" that many of the potential fact witnesses with the relevant knowledge of the administration of the Plan and the collection of the tobacco surcharge work and reside in the Middle District of Tennessee. *See* (Doc. 14, at 9). And yet, we acknowledge that at this stage, Tractor Supply has failed to identify the witnesses that would be unavailable and indicate how they would be unavailable to testify in the Middle District of Pennsylvania.

*See Scanlan*, 366 F. Supp. 3d at 678 (finding this factor neutral as "there is no indication that any [witness] would be unavailable [to testify]…"); *Edwards*, 313 F. Supp. 3d at 623 (finding neutrality due to defendant's failure to identify third-party witnesses). Accordingly, we find this factor lends no weight to transfer.[3]

Sixth, we must examine "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "As recognized by other decisions, … 'the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis.'" *Coppola*, 250 F.R.D. at 200 (quoting *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)). Here, while we presume that the majority of the documents necessary for the underlying action are located at Tractor Supply's headquarters in Tennessee, Tractor Supply does not explain why any of these documents could not be easily

[3] We acknowledge that witnesses may additionally include the members of the class action, but as the plaintiff herself has noted, "it is well-settled that class members are rarely subject to discovery or called to testify at trial." (Doc. 21, at 17) (citing *Sessions v. Owens-Illinois, Inc.*, No. 1:07-CV-1669, 2011 WL 2415387, at *2 (M.D. Pa. June 13, 2011)).

produced in Pennsylvania. Therefore, this factor is given no weight.

**B. Public Interest Factors**

The Third Circuit has additionally articulated a variety of public interest factors, including:

> (1) the enforceability of the judgment; (2) practical considerations to make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge within the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80. However, courts throughout this Circuit routinely acknowledge that "factors such as the enforceability of the judgment, public policies, and the familiarity of the trial judge with the applicable law are neutral [] because the causes of action at issue arise under federal law." *Scanlan*, 366 F. Supp. 3d at 679 (quoting *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 633 (W.D. Pa. 2006)). Because the plaintiff has brought forth this action under the Employee Retirement Income Security Act, a federal law, we find that this analysis applies to the current action and therefore we find those factors to be neutral.

Turning our attention to the remaining public factors, we must first

note that we would ordinarily consider the relative administrative difficulty in the two fora resulting from court congestion. However, neither party has addressed this issue in their briefs. Therefore, without sufficient information to adequately consider this factor, we must give it no weight. Second, "the practical considerations to make trial easy, expeditious, or inexpensive" are additionally analyzed in a motion to transfer. However, "[w]e must be careful not to interpret this factor as to 'double count' any considerations that we made in the context of other factors." *Id.* (quoting *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2009 WL 3055300, at *5 (W.D. Pa. Sept. 21, 2009)). In light of our analysis, we find that we have already considered the necessary relevant facts for this analysis concerning this action's practical considerations. Therefore, we will consider this factor neutral.

Indeed, all that we are left to consider is "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879–89. While we acknowledge the individual plaintiff's interest in litigating her case in her preferred district with local ties, we reiterate that "[i]n a potentially complex collective action such as this[,] a strong public interest exists in having the lawsuit heard in the district at the 'center of

gravity' of the dispute." *Stevens*, 2024 WL 1285535, at *5. Moreover, "[i]t makes sense that the burdens of litigation fall on prospective juries and court personnel in the district having the most direct connection with the claims." *Id.* (citing *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. CIV.A. 2:13-05805, 2014 WL 1555133, at *8 (D.N.J. Apr. 14, 2014)) (explaining that the district where the "center of gravity" of the dispute has a "stronger local interest" in the adjudication of the suit."). Therefore, we find this factor weighs in favor of transferring.

## IV. Conclusion

Upon consideration of the record, we find that Tractor Supply has met its burden in establishing that transfer is appropriate. The underlying action concerns a potential class action for policy decisions formulated and implemented in Tractor Supply's headquarters in Brentwood, Tennessee, with participants and beneficiaries potentially spread across the nation. Moreover, the majority of factors weigh in favor of Tractor Supply's motion to transfer. Accordingly, the motion will be granted.

An appropriate order follows.

Dated: June 26, 2025

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge